UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COURTNEY S. M.,[1]

                             Plaintiff,         **DECISION AND ORDER**

v.                                               1:20-cv-1830–JJM

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [7, 8].[2] The parties have consented to my jurisdiction [10]. Having reviewed their submissions [7, 8, 9], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the 616-page administrative record [6] is presumed. On February 26, 2018, plaintiff filed an application for Social Security Disability ("SSD") benefits, alleging an onset date of February 17, 2017. Administrative Record [6] at 178.[3] In her

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise noted, page references are to CM/ECF pagination (upper right corner of the page).

[3]     Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page).

application for benefits, plaintiff alleged several limiting conditions, including anxiety/panic attacks, memory loss, depression, migraines, paranoia, and difficulties with concentration, comprehension, and communication. Id. at 211. Plaintiff's claim was initially denied. Id. at 80.

Administrative Law Judge ("ALJ") Roxanne Fuller conducted a hearing on December 5, 2019. Id. at 41. Plaintiff appeared with an attorney representative. Id. At the hearing, plaintiff testified that her memory and cognitive problems made it difficult to perform routine work tasks. Id. at 45-46. She experienced anxiety and felt overwhelmed and tired all the time. Id. at 46-47, 60-61. She would get migraines once or twice a week, which could last for hours or days. Id. at 55. However, she did not take any medication for any of her conditions other than Tylenol, citing anxiety or fear about taking medication. Id. at 48-49, 51, 55.

ALJ Fuller issued a Notice of Decision denying plaintiff's claim. Id. at 10-24. She found that plaintiff had the following severe impairments: anxiety and demyelinating disease. Id. at 16. She also assessed plaintiff as having "moderate limitation[s]" in her ability to interact with others, and to concentrate, persist, or maintain pace; in addition to a "mild limitation" in her ability to understand, remember or apply information, and to adapt or manage herself. Id. at 16-17.

ALJ Fuller determined that plaintiff retained the residual functional capacity ("RFC") to perform "light work" as defined by the applicable regulations,[4] except that she could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance; have occasional exposure to moving mechanical parts; occasional exposure to unprotected heights;

---

[4]     Light work is defined to "involve[] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds". 20 C.F.R. §§404.1567(b), 416.967(b). Such work can "require[] a good deal of walking or standing, or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls". Id. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10, 1983 WL 31251.

occasionally operate a motor vehicle; could perform routine repetitive tasks; perform low stress jobs requiring only occasional decision-making; tolerate no more than occasional changes in the work settings; and tolerate only occasional interaction with coworkers, supervisors and the general public. Id. at 18.

In reaching her determination, ALJ Fuller considered plaintiff's claimed impairments, including "severe migraine headaches", chronic anxiety, and memory problems, but found that the medical and other evidence of record did not support the claimed level of severity. Id.  She reviewed the objective mental examinations in the record and found that, while they indicated "mild memory impairment", they "documented alert and oriented cognition, logical and coherent thought processes" and "intact judgment and insight". Id. at 19-20.  She found that the mental health records indicated that plaintiff's anxiety was being managed through conservative, outpatient therapy, and that plaintiff reportedly rarely had panic attacks. Id. at 19. She further found that the physical examination findings of record "demonstrated normal and independent ambulation, grossly normal range of motion and muscle strength . . . intact sensation and reflexes, and intact coordination". Id.

In her Decision, ALJ Fuller considered the medical opinions of Despina Isihos, D.O., J. Meyer, M.D., and Christopher Keller, Psy.D. Id. at 20-22. Dr. Isihos conducted a physical examination of plaintiff in March 2018 and found her physical functionality to be well within normal limits. Id. at 481-83. She did not opine any exertional or postural limitations for plaintiff, but she did note plaintiff's headaches, migraines, and working diagnosis of multiple sclerosis, and opined some environmental limitations. Id. at 483. ALJ Fuller found Dr. Isihos' opinion "only partially persuasive" because she believed plaintiff's conditions supported greater exertional and postural limitations. Id. at 21.

Dr. Meyer, the state agency consultant, provided an initial assessment dated May 23, 2018. Id. at 71-79. However, ALJ Fuller assigned this assessment no persuasive value as Dr. Meyer did not personally examine plaintiff and "essentially adopted" Dr. Isihos' opinion. Id. at 21.

Dr. Keller provided a medical source statement dated November 20, 2019, assessing plaintiff with generalized anxiety disorder, which he had been treating with individual psychotherapy but no medication due to plaintiff's reported anxiety about taking medication. Id. at 600. Dr. Keller opined via checkbox that plaintiff's anxiety rendered her "unable to meet competitive standards" (or worse) in several functional categories, including "maintaining attention for two hour segments", "maintain regular attendance and be punctual", "sustain an ordinary routine without special supervision", "make simple work-related decisions", "complete a normal workday and workweek without interruptions", "perform at a consistent pace", "deal with normal work stress", "understand and remember detailed instructions", "carry out detailed instructions", "set realistic goals or make plans independently of others", "deal with stress . . . work", "travel in unfamiliar place", and "use public transportation". Id. at 602-03. He further opined that plaintiff would find many aspects of work stressful and would miss more than four days per month due to her impairments. Id. at 604. ALJ Fuller found Dr. Keller's opinion "generally unpersuasive" because she felt his findings were based too heavily on self-reported symptoms and were not consistent with the longitudinal treatment records that documented mental functioning within normal limits. Id. at 22.

The record also contains a medical opinion by Christine Ransom, Ph.D., completed March 30, 2018. Id. at 485-88. Dr. Ransom diagnosed plaintiff with "mild and episodic" unspecified anxiety disorder and major depressing disorder, and she opined that

plaintiff had mild and episodic difficulty understanding, remembering and applying complex directions, regulating emotions, controlling behavior and maintaining wellbeing. Id. at 487. Dr. Ransom opined that plaintiff's mild psychiatric conditions would otherwise not interfere with her ability to function on a daily basis. Id. at 487-88. This opinion is unaddressed in ALJ Fuller's decision.

## ANALYSIS

Plaintiff argues that ALJ Fuller's findings were unsupported by substantial evidence because she improperly relied on her lay interpretation of the medical evidence in crafting the RFC assessment, failing to account for plaintiff's complaints of cognitive and memory impairments (Plaintiff's Brief [7-1] at 11-17); and that she failed to properly consider plaintiff's migraines as a severe impairment. Id. at 18-21.

### A.   Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). *See also* Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also

not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. See Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.     Did ALJ Fuller Err in her Consideration of the Medical Opinion Evidence?**

Plaintiff argues that ALJ Fuller's RFC finding was unsupported by substantial evidence because she improperly relied on her lay interpretation of the medical evidence and failed to account for plaintiff's complaints of cognitive and memory impairments. Plaintiff's Brief [7-1] at 11-17. I agree.

Here, there were two medical opinions of record that rendered meaningful insight into plaintiff's cognitive and psychological limitations: those of treating source Dr. Keller and of consultative examiner Dr. Ransom. ALJ Fuller roundly rejected the medical opinion of Dr. Keller, finding it based on subjective complaints that were incompatible with the longitudinal treatment records which documented mental functioning largely within normal limits. [6] at 22. This determination, in and of itself, was likely within the ALJ's purview to make, and it appears to be substantially supported by record evidence. See, e.g., Melissa R. v. Commissioner of Social Security, 2022 WL 874397, *4 (N.D.N.Y. 2022) (upholding rejection of treating source opinion proper as inconsistent with objective medical evidence and other substantial evidence in the record); Pawlak v. Saul, 2020 WL 3046204, *8 (W.D.N.Y. 2020) ("[t]he fact that Dr. Matthews's opinions were inconsistent with the objective evidence of record and Plaintiff's daily activities provided a sufficient basis for the ALJ to discredit those opinions").

However, ALJ Fuller then proceeded to craft specific mental and psychological limitations for plaintiff in her RFC determination. ALJ Fuller determined that plaintiff could perform routine repetitive tasks; perform low stress jobs requiring only occasional decision-making; tolerate no more than occasional changes in the work settings; and tolerate only occasional interaction with coworkers, supervisors and the general public. Id. at 18. Admittedly, these are modest findings, and, under other circumstances, they might be considered among the kinds of "common sense" or "*de minimis*" assessments about a claimant's functional capacity that courts have allowed ALJs to make. See, e.g., Johnson v. Colvin, 669 F. App'x 44, 47 (2d Cir. 2016) (Summary Order) (*de minimis* assessments); Stoeckel v. Commissioner of Social Security, 2019 WL 5445518, *2 (W.D.N.Y. 2019) (common sense assessments); Ippolito v. Commissioner of Social Security, 2019 WL 3927453, *4 (W.D.N.Y. 2019) (same).

But here, these limitations were constructed in the face of much more restrictive limitations opined by a treating source, and complained of by plaintiff, and are not explicitly tethered to specific evidence in the record. See, e.g., Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014) (Summary Order); Annis v. Commissioner of Social Security, 2019 WL 6875231, *10-11 (W.D.N.Y. 2019). Certainly, an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole" (Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order)), but it is not clear that ALJ Fuller weighed all the evidence in making her RFC determination, particularly since she completely omitted any discussion of Dr. Ransom's opinion.

ALJ Fuller's omission of Dr. Ransom's opinion may by itself be reason for remand. Under the applicable regulations, the ALJ is tasked with evaluating the persuasiveness of all the medical opinions of record based on the factors of supportability, consistency,

relationship with the claimant, specialization, and other factors. 20 C.F.R. §404.1520c(a)-(c); *see* Jacqueline L. v. Commissioner of Social Security, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021). The ALJ must, at minimum, explain her consideration of the supportability and consistency factors, which the regulations deem the two most important factors. 20 C.F.R. §404.1520c(b)(2).

While "[t]he new regulations do not require the ALJ to give specific weight to any particular medical opinion; . . . they require that the ALJ articulate how he considered the medical opinions and how persuasive he finds the opinion." Jacqueline L., 515 F. Supp. 3d at 8. The Commissioner concedes as much. *See* Commissioner's Brief [8-1] at 9, 11 ("[t]he ALJ must explain in his or her decision how persuasive he or she finds a medical opinion. . . . the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources"). The ALJ's omission of Dr. Ransom's seemingly probative medical opinion is, accordingly, a basis for remand. Jackson v. Kijakazi, 2022 WL 620046, *20 (S.D.N.Y. 2022) ("[r]emand is appropriate when the ALJ failed to apply the correct legal standard, including adequately considering and applying the new regulatory factors"); Johnathan W. v. Saul, 2021 WL 1163632, *6 (N.D.N.Y. 2021) ("the Court concludes that the omission of any articulated reasoning concerning Dr. Thompson's opinions constitutes reversable error").

While the ALJ "need not recite every piece of evidence that contributed to [her] decision, so long as the record 'permits us to glean the rationale of an ALJ's decision' . . . [r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013). Where, as here, the ALJ rejects one medical opinion, ignores another, then proceeds to craft RFC limitations

without tethering same to specific findings in the record, I cannot conclude that her Decision is supported by substantial evidence.

        **C.**        **Did ALJ Fuller Err in her Consideration of Plaintiff's Complaints of Migraines?**

Plaintiff also challenges ALJ Fuller's failure to include migraines as one of severe impairments at step two of the adjudication process. [7-1] at 18-21.  A severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities". 20 C.F.R. §404.1520(c); *see also* §404.1522 (non-severe impairments).  This standard has been described by the Second Circuit as "*de minimis*" and "intended only to screen out the very weakest cases". McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). As plaintiff has at various times claimed and been assessed with migraines ([6] at 211, 483, 610), it may well have been proper for ALJ Fuller to have included such condition as a severe impairment.

Notably, this finding is only one step of the sequential analysis, and such an omission can be considered harmless error "when it is clear that the ALJ considered the claimant's impairments and their effect on his or her ability to work during the balance of the sequential evaluation process". Graves v. Astrue, 2012 WL 4754740, *9 (W.D.N.Y. 2012). Here, however, while ALJ Fuller noted plaintiff's claims of "severe migraine headaches" ([6] at 18), she did not review and discuss the medical evidence for that condition like she did for plaintiff's "severe impairments" of anxiety and demyelinating disease. Id. at 19-20. As plaintiff points out, it is possible ALJ Fuller considered migraines to be a symptom of plaintiff's demyelinating disease rather than its own condition. *See* [7-1] at 20.

On remand, the ALJ should fully consider plaintiff's claims of migraine headaches and fully articulate why she considers the condition, by itself or in combination with plaintiff's other conditions, to be a severe impairment and whether such impairment is disabling or not. *See*, *e.g.*, 20 C.F.R. §§404.1520c(a)(4)(ii), (c); 404.1523.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [7] is granted to the extent of remanding this claim to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied, and the Commissioner's motion for judgment on the pleadings [8] is also denied.

**SO ORDERED**.

Dated: July 25, 2022

>/s/ Jeremiah J. McCarthy
>JEREMIAH J. McCARTHY
>United States Magistrate Judge